**FILED & ENTERED**

**MAY 04 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Glen E Pyle<br><br>Debtor(s).<br><br>Ian Campbell<br><br>Plaintiff(s),<br>v.<br><br>Glen Pyle<br><br>Defendant(s). | CHAPTER 7<br><br>Case No.: 1:10-bk-24968-GM<br>Adv No:  1:11-ap-01181-GM<br><br>**MEMORANDUM OF OPINION AFTER TRIAL**<br><br>Date:         March 2, 2020<br>Time:         9:00 a.m.<br>Courtroom: 303 |

    Glen E. Pyle filed a bankruptcy case under chapter 7 in 2010.  On March 7, 2011, Marc Berry filed an adversary proceeding for fraudulent transfer of two parcels of real property (1:11-ap-01180, "the Berry case")  and that same date Ian Campbell filed this adversary proceeding to declare Pyle's debt to him to be non-dischargeable, for fraudulent transfer,  and also to deny discharge under 11 USC §727(a) (1:11-ap-01181, "the Campbell case").   The Berry adversary

-1-

proceeding became the lead case until after Campbell passed away. Campbell's estate then substituted in as plaintiff in this adversary proceeding and the Chapter 7 Trustee took over prosecuting the Berry case.

It was determined that it would be most efficient for the Court to try the §727(a) claim first, with the Berry matter trailing. That trial took place on March 2, 2020.

## THE LITIGATION HISTORY

Attempting to obtain discovery in both cases has been a horror. Because the major assets that might be available for collection and to the bankruptcy estate consist of two pieces of real property that had been transferred to a trust, it was imperative that Pyle produce a series of documents so that it could be determined whether the transfers were valid and the properties remained in the trust and out of the reach of Pyle's creditors. All initial discovery attempts were done in the Berry case.

One of the major issues concerns the entity entitled "Sweetwater Management Company," ("Sweetwater") which was the recipient of one of the properties. Other documents relate to the "Glen E. Pyle Irrevocable Trust" ("the Pyle Trust" or "Trust"). Starting in December 2011, Berry attempted to obtain information and documents as to those entities.[1] Among the records sought were documents showing rental income from the properties, bank account statements, bank account numbers, as well as tax returns for Sweetwater and for the Pyle Trust.[2] As to Trust bank account records and other documents, when Pyle did produce some they were illegible.[3] Accounting records were impossible to decipher. Pyle pleaded a lack of knowledge and was generally uncooperative. The documents were never satisfactorily produced.

Ian Campbell had been representing himself for a while. He was granted relief from stay to proceed in the state court to liquidate the debt owed him by Pyle. Judgment was obtained and then it was time to proceed in the Campbell bankruptcy adversary proceeding. After Mr. Campbell died and his estate took over the case, new counsel began to undertake discovery and

---

[1] 1:11-ap-01180, dkt. 9, etc.
[2] 1:11-ap-01180, dkt. 16.
[3] 1:11-ap-01180, dkt. 34

to move this adversary proceeding forward to trial. In November 2018, Pyle was served with a demand for production of documents. Pyle did not respond.[4] Plaintiff sought an order to compel production and for sanctions.[5] Because there is an unpaid sanctions order in the Berry case, the Court has determined that monetary sanctions are not a practical deterrent. In August 2019, the Court granted the Campbell motion for sanctions and ordered that Pyle would not be permitted to introduce any further evidence that he had not already produced and that he would not be permitted to testify at trial except if he is called as a witness by the Plaintiff.[6]

The trial was continued from its original November 2019 date and it was determined that it would be limited to the §727(a) issues as these could resolve the Campbell §523 claims.

Trial was scheduled for March 2, 2020 at 9:00 a.m. Mr. Pyle was given notice, but failed to appear. Because the Berry status conference was trailing this, Mr. Aver appeared by phone, but was excused from remaining. Benjamin Nachimson of Woolf & Nachimson, LLP appeared on behalf of the Plaintiff. Plaintiff filed a post-trial brief and the trial transcript has been filed as part of a request for judicial notice.[7] No post-trial papers were filed by Mr. Pyle.

## THE EVIDENCE AND FACTS

The assertion before the Court is that Pyle failed to keep and preserve any tax returns for the Trust for tax years 2011 through 2017. Also that the Trust failed to file tax returns from January 1, 2006 through the filing of Pyle's bankruptcy petition in 2010. Further that Pyle failed to keep and preserve the most basic books and records related to the Trust, which included bank statements and rent records. Because Pyle used the Trust assets to pay for his personal expenses, the Plaintiff cannot even begin to ascertain Pyle's business transactions or financial condition. This is a violation of 11 USC sec. 727(a)(3).

---

[4] It should be noted that Pyle is pro se in the Campbell case. But because he has claimed again and again that he does not receive his mail, the Court has asked Mr. Aver (Pyle's attorney in the Berry case) to be an intermediary for service of motions, etc. on Pyle. Mr. Aver has (reluctantly but graciously) agreed to do this. Pyle has claimed that the Post Office does not or will not or cannot deliver his mail. The Court finds this difficult to believe. Pyle has not obtained a post office box or any other means to obtaining mail. This is all part of the lack of cooperation shown by Pyle in both the Berry and the Campbell cases.
[5] 1:11-ap-01181, dkt. 101, 112
[6] 1:11-ap-01181, dkt. 129
[7] 1:11-ap-01181, dkt. 148, 149

The Plaintiff is the successor trustee of the Ian Campbell Revocable Trust dated August 12, 2011 ("the Campbell Trust"), which is the owner of the judgment obtained against Pyle.[8] The judgment obtained by Plaintiff in that case reflects the loans made by Campbell to the Pyle Trust in the principal amount of about $90,000. The judgment amount is for $154,342.58.[9]

The Pyle Trust was created by a trust agreement executed on January 12, 2000. Under the terms of the trust agreement, 100 percent of the trust funds were to be held in the trust for the benefit of Pyle's son, Christopher Glen Pyle. The Defendant was not authorized to use trust assets for his own benefit.[10]

On June 28, 2004, Pyle recorded two grant deeds attempting to transfer a fee interest to the Pyle Trust in two properties: 9466 Sunland Blvd, Sun Valley, CA (the "Sunland Property" or "Sunland"), which has a fair market value of $1,350,000 and a monthly rental value of $3,800[11]; and 25266 Vermont Dr., Newhall, CA (the "Vermont Property" or "Vermont"), which has a fair market value of $590,000 and a monthly rental value of $2,800[12].

Pyle filed for bankruptcy under chapter 7 on November 30, 2010. He scheduled as his only source of income a monthly social security payment of $802 and he set forth his monthly expenses as $1,040, which included $400 per month for rent. He did not reveal any income from either the Sunland Property or the Vermont Property via the Pyle Trust. Further, although he claimed to pay $400 per month for rent, he later admitted that he does not pay rent, but that he covers taxes and maintenance for the Sunland Property as needed and that he does that by putting money into the Pyle Trust. However, the Pyle Trust pays the utilities for Sunland.[13]

In the Petition there is no mention of the Defendant's interest in the Pyle Trust although he used funds from the Pyle Trust (generated by rent from the Vermont Property) to pay his household expenses.[14] Part of the $10,000 that Pyle borrowed from Campbell was to prevent the

---

[8] Ian Campbell: Estate of Campbell v. Pyle Irrevocable Trust: Glen E. Pyle, Los Angeles Superior Court case BC416442.
[9] Ex. 1, 4; testimony of Mary Casamento, dkt. 149, trial transcript, p.12:14-13:3; 14:3-17:11.
[10] Ex. 10, dkt. 116, p.18
[11] Ex. 18; ex. 23; testimony of Rick Barrett, dkt. 149, trial transcript, p. 45:5-22.
[12] Ex. 28; ex. 23; testimony of Rick Barrett, dkt. 149, trial transcript p. 43:24-45:15, p. 45:24-46:1.
[13] Ex. 22, page 67-68 (referring to Lot 8); ex. 25, p. 360:6-23.
[14] Ex. 25, pages 360:2-23: 365:2-17; and 368:1-14.

property from being foreclosed on, but the balance was to pay Pyle's personal lawyer in a child custody dispute.[15] Post-petition, Pyle executed trust deeds on the real properties to secure his attorney fees to Raymond Aver, his bankruptcy attorney in the Berry v. Pyle case.

The evidence shows that while Pyle continuously distributed trust funds to himself, he never gave any to his son, who was the named beneficiary of the Pyle Trust.[16] He always considered this to be his own property and set it up in order to prevent a probate upon his death.[17]

As to concealing material recorded information, as noted above, Pyle provided very little and what he did turnover was in disarray. Specifically he failed to provide any information as to the debt to Aver that is secured by the trust deeds. He also failed to provide any documents relating to transfers between the Pyle Trust and himself individually.

## ANALYSIS

The Plaintiff proceeded under 11 USC §727(a)(3):

(a) The court shall grant the debtor a discharge, unless—

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The most current opinion from the Ninth Circuit Court of Appeals is *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755 (9th Cir. 2008). In that case the court granted summary judgment under §727(a)(3) for failure of the debtor to keep records as to some of his business entities.

> We have stated that the purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. *Cox*, 41 F.3d at 1296 (citation omitted). The disclosure requirement removes the risk to creditors of "the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of

---

[15] Testimony of Mary Casamento, dkt. 149, trial transcript 16:20-17:7. The $10,000 note is not in evidence and the Court is unable to ascertain whether it was executed by Pyle on his own behalf or on behalf of the Pyle Trust (which was how Ex. 1 – the initial note for $81,013 was executed).
[16] Ex. 26, page 294:11-25
[17] Ex. 12, page 50:5-9

> books or records." *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953). The statute does not require absolute completeness in making or keeping records. *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971). Rather, the debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." Id. This exception to dischargeability, however, "should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Industrie Aeronautiche v. Kasler (Matter of Kasler)*, 611 F.2d 308, 310 (9th Cir. 1979) (citation omitted).

*Caneva*, 550 F.3d at 761.

> As the Third Circuit has stated "'[c]omplete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.'" *Meridian Bank*, 958 F.2d at 1230 (quoting *In re Underhill*, 82 F.2d 258, 259-60 (2d Cir. 1936)).

*Id.* at 762

> If a creditor establishes a prima facie violation of § 727(a)(3), a debtor may show that he is nonetheless entitled to discharge by establishing that his failure to keep or preserve records was justified under the circumstances of his case. See 11 U.S.C. § 727(a)(3); *Cox*, 41 F.3d at 1296-97. . . . In *Cox*, we stated that "'[j]ustification for [a] bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them.'" 41 F.3d at 1299 (quoting *Matter of Russo*, 3 B.R. 28, 34 (Bankr. E.D.N.Y. 1980)). The Third Circuit has stated that the fact that a debtor was honest in producing all the records he had was not sufficient to satisfy the requirements of § 727(a)(3); rather, it is a condition to obtaining a discharge in bankruptcy "'either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them.'" *Meridian Bank*, 958 F.2d at 1232 (quoting *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir. 1941)).

*Id.* at 762-763

In *Caneva*, the debtor owned or controlled numerous business entities, recreational and mobile home parks, and an airplane. A creditor filed a complaint under §727(a)(3). Caneva admitted that he kept no records for the companies and that he had no documentation regarding

the payment of $500,000 for a brokerage fee and for a $20 million loan that he stated he had not received. The bankruptcy court granted summary judgment and the court of appeals affirmed – both based on the case of *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294 (9th Cir. 1994).

As noted in the *Caneva* opinion, the Ninth Circuit continued to rely on its analysis in *Cox*. In that case, the debtor's husband ran the various businesses, but the wife (the debtor) was a signatory on many of them. She kept no records. Her defense was that she was not involved in the business activities of her husband and thus has no duty to keep business records.

The court held that the burden of proof had shifted to Ms. Cox to show by a preponderance of the evidence that her failure to keep adequate business records was justified under all the circumstance of the case. She could not just show that she did not comprehend the need for them, but the justification must demonstrate that because of unusual circumstance, she was absolved from the duty to personally maintain records. *Cox*, 41 F.3d at 1297.

Because of the marital relationship between Ms. Cox and her husband, the court of appeals had previously remanded this case with instructions as to specific findings that the bankruptcy court was required to make. The Ninth Circuit determined that under the circumstances of that case, Ms. Cox acted in reasonable reliance on her husband and did not have a duty to maintain records.

In the case before this court, Mr. Pyle acted on his own behalf. He set up the Trust. He transferred the property. He had a duty to file tax returns on his own behalf, on behalf of Sweetwater Management Company, and on behalf of the Trust for which he was the trustee. There were large gaps in the records that he produced. Bank statements, lease agreements, rental income statements, and other normal documents of ownership were all missing. It does not take a sophisticated business person to know that he must file tax returns for himself and his independent companies and trusts, that if there is rental income it must be documented and reflected in those tax returns, and that it is necessary to have bank accounts through which the income and payments occurred for each entity, etc.

What Pyle did produce was largely illegible and unorganized. At one point he handed in

a hand-written list and ledger but the back-up documents were unsorted and the ledger was unreadable. It was close to impossible for his creditors to ascertain what assets he owned and at what period of time.

In its closing brief the Plaintiff uses the analysis tool of *Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824(Bankr. N.D. Ohio 2004). *reconsid. Denied*, 2004 WL 3079733 (Bankr. N.D. Ohio Nov. 24, 2004) in that this is a case used by this Court in the Memorandum of Opinion in *Pointe San Diego Residential v. Weingarten,* adv. Case no. 1:05-ap-01091. The Pyle case does not require the level of detailed analysis that occurred in the Weingarten case, which involved an economically sophisticated debtor with a variety of assets, lots of paperwork, but major gaps in the books and records.

Here there is virtually no paperwork and only two assets in question. Plaintiff has offered no evidence where there should be recorded information, particularly rent ledgers for the Vermont Property. Pyle admits that he did not retain such information or never had it. There should have been bank accounts to receive rent payments and receipts for maintenance and other expenses during the years before bankruptcy. Had the creditors and the bankruptcy trustee had access to such records, they could have ascertained Pyle's actual financial condition because it would have shown the amount collected by and spent by the Pyle Trust and the amount that was used by Pyle for his own personal needs.

Pyle is required to have created and preserved the books and record of the assets and liabilities of the Pyle Trust (particularly the rental income from the Vermont Property), which provided money for Pyle to live on. Further, because Pyle was the trustee of the Pyle Trust and (apparently) the sole recipient of its liquid assets, although he was not a beneficiary, he had a fiduciary duty to create and maintain the appropriate books and records so that his son (the sole beneficiary) could ascertain the financial history of the Pyle Trust. These requirements do not require a sophisticated business knowledge. Any reasonable person would have kept these records. Pyle did not.

Beyond the failure to reveal the income received from the Vermont Property, Pyle also omitted from his schedules that he was living virtually rent-free in the Sunland Property and that

this had value.  He attempted to show that he is that "poor but unfortunate debtor" who deserves forgiveness for his debts.  Without the information that is required, it has been time-consuming and expensive for his creditors to ascertain whether he qualifies for a discharge.  Bankruptcy is not a game of hide-and-seek.

Plaintiff has met the burden imposed under 11 USC section 727(a)(3).  Judgment will be granted to the Plaintiff and discharge denied to Glen E. Pyle.

###

Date: May 4, 2020

*[signature]*

Geraldine Mund
United States Bankruptcy Judge